UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

XIAO QING LIU,

                         Plaintiff,

        – against –

NEW YORK STATE DEPARTMENT OF
HEALTH, NEW YORK POLICE DEPARTMENT
5TH PRECINCT, BELLEVUE HOSPITAL
CENTER, RYAN NENA COMMUNITY
HEALTH CENTER, USPS, and FEDEX,

                         Defendants.

**OPINION & ORDER**

16 Civ. 4046 (ER)

Ramos, D.J.:

        Plaintiff Xiao Liu brings this *pro se* action pursuant to 42 U.S.C. § 1983 against the City

of New York (the "City"), Ryan NENA Community Health Center ("Ryan NENA"), Federal

Express Corporation ("FedEx"), New York City Health and Hospitals Corporation ("NYCHH")

and a number of their respective employees.[1]  Plaintiff asserts claims for, among other things,

false arrest, false imprisonment, and involuntary confinement in violation of her First, Fourth,

Fifth, Sixth, and Fourteenth Amendment rights.

        Before the Court are Defendants' motions to dismiss pursuant to Rules 12(b)(1) and (6)

of the Federal Rules of Civil Procedure.  For the reasons set forth below, Defendants' motions

are GRANTED in part and DENIED in part.

---

[1] The individual defendants added to the Amended Complaint include, Sergeant Bertran Bouillon and Officer
Matthew Decagna of the 5th Precinct; Doctors Camila Lyons, Abigail Hawkins, Sunil Penestti, Jonathan Howard,
John Udarbe, and Xiaoling Song, and Nurses Harley Charlene, Tsering Phunstock, Kim Behrens, Yin Lam, Analyn
Velasco, Igama Zenaida, Chih Hsu from Bellevue Hospital; and Trista Chiu, a social worker, Yu-Ying Chen, an
"LCAT," Mr. Williams, an advocacy director, and Sona Daridson, from the Medicaid Office at Bellevue Hospital.
Plaintiff also names numerous individuals employed by Ryan NENA.  None of these individuals have been served.

## I. Background

Plaintiff is a sixty-five year old Chinese woman whose primary language is Mandarin. Her capacity to speak and understand English is limited. Amended Complaint (Doc. 71) at 4. Though the Amended Complaint is a not a model of clarity, the Court endeavors to construe Plaintiff's claims to raise the strongest arguments that they suggest. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

Plaintiff alleges that on December 30, 2014, she appeared voluntarily to meet with Sergeant Bertran Bouillon at the 5th Precinct of the New York City Police Department to discuss a "verichip-locator" she claimed had been implanted in her body. Amended Complaint at 4. Weeks later, on January 18, 2015, at approximately 10:00 am, she returned to the precinct to report a burglary and seek further assistance with removing the tracking device in her body. In response to her request, a lieutenant—who Plaintiff does not name or otherwise identify— suggested that she go to a hospital. *Id.* She informed the lieutenant that she would go at a later date because she did not have the proper foot attire or an umbrella, and had other chores to accomplish. *Id.* Plaintiff claims that at no point during this interaction with the lieutenant did she "verbally or physically threaten, intimidate, or frighten another person" or pose a danger to herself. *Id.* Nevertheless, without telling her, the lieutenant called an ambulance at approximately 10:40 am. *Id.*

Once the ambulance arrived, Plaintiff informed the emergency medical personnel ("EMTs") that a tracking device had been implanted in her body and that she did not want to go to the hospital. *Id.* at 5. She claims that while speaking to the EMTs, officers, including Officer Matthew Decagna, grabbed her bag and umbrella, handcuffed her, and dragged her into the

ambulance.[2]  *Id* at 5.  Somehow, Plaintiff managed to free one hand from the handcuffs and was once again restrained.  *Id.*  Although Plaintiff continued to tell the officers and EMTs that she did not want to go to the hospital and ask that she be let go, her requests were ignored.  *Id*.

The ambulance arrived at Bellevue Hospital at approximately 11:30 am.  *Id.*  Plaintiff was immediately taken to the psychiatric unit where the handcuffs were removed and she was told that she was not free to leave.  *Id.*  Plaintiff claims that she did not engage in any violent or threatening behavior at the hospital and that she was "well-groomed, appeared physically health[y] . . . and sane."  *Id.*  Nevertheless, Dr. Camila Lyons did not perform an independent assessment of her medical condition to confirm the EMTs' account and instead forcibly hospitalized her based on their statements.  *Id.*  Dr. Lyons' decision was affirmed—again without further assessment—by Doctors Abigail Hawkins, Sunil Penestti, Jonathan Howard, and John Udarbe.  *Id.* at 5, 7.  Additionally, Plaintiff alleges that Trista Chu—the social worker assigned to her case—made a number of false allegations in her report, including that Plaintiff swung at the EMTs and that she endangered others.  *Id.* at 8.

Plaintiff also alleges that she was prevented from speaking with her daughter, who had been called by hospital staff, and told that she not could not leave the hospital until she took "Risperidone"—a type of anti-psychosis medication.  *Id.* at 6.  Specifically, she claims that Dr. Xiaoling Song ordered her to take medication and because she refused, the hospital staff put the medication into her food.  Plaintiff claims that the medication caused her to experience headaches, dizziness, facial numbness, chest pain, bilateral paralysis and cramps.  *Id.* at 7.  She

---

[2] Plaintiff claims that she received a letter from the City Law Department stating that because the criminal charges against her had been dismissed, the records pertaining to her arrest had been sealed.  She argues that she should be granted access to those documents and that the officers lied about her behavior being "violent" or "endangering others."  Amended Complaint at 5.

3

further alleges that she attempted to file complaints against the hospital and its staff and also requested multiple hearings to challenge her confinement. These attempts were allegedly rebuffed and Plaintiff remained in the hospital until February 3, 2015, for a total of sixteen days, when she was ordered to be released by a judge. The judge found that she was not an imminent risk of danger to herself or others. *Id.* Upon release from the hospital, Plaintiff was not given any prescriptions or instructed to take any medicine. *Id.* Plaintiff claims that at no point during her stay at the hospital did she ever engage in any physically violent behavior against herself or others. She also states that she does not have a history of violence and that the hospital's own records confirm this history.

In a separate set of allegations, Plaintiff alleges that later that year, in September, she became an outpatient at Ryan NENA. *Id.* at 9. The doctor with whom she visited suggested that various tests be run. *Id.* Plaintiff claims that she was injected with something that made her left arm feel tender, numb, and weak and that several blood tests were completed. *Id.* She also understood that they would be implanting another "locator" in her chest. *Id.* On December 27, 2015, Plaintiff returned to Ryan NENA and asked for her medical records. *Id.* She claims that she was not provided with a complete set of her medical records and that information was withheld from her. Plaintiff claims that she contacted the New York State Department of Health Division of Certification and Surveillance ("NYSDH") in order to complain about her treatment. *Id.* at 10. The NYSDH responded to Plaintiff via letter, which she alleges was dismissive of her complaint. *Id.*

Plaintiff sent letters to the NYSDH via the United States Postal Service ("USPS") and FedEx complaining about her treatment at Ryan NENA. She claims that although she sent the

letters by overnight priority, the USPS and FedEx purposely delayed her mailings; and the letters did not arrive on time. *Id.* at 11, 12.

## II. Procedural History

On May 31, 2016, Plaintiff filed a Complaint against the NYSDH, the 5th Precinct of the New York Police Department ("NYPD"), Bellevue Hospital Center, Ryan NENA, USPS and FedEx. (Doc. 2). By order dated August 15, 2016, the Court *sua sponte* dismissed the NYSDH and the USPS as defendants as entitled to immunity under the Eleventh Amendment and the doctrine to sovereign immunity, respectively. The Court also directed the Clerk of Court to amend the caption of the action to replace Bellevue Hospital Center and the NYPD with the proper defendants: New York City Health and Hospitals Corporation ("NYCHH") and the City of New York, respectively. (Doc. 6).

On October 13, 2016, NYCHH filed a letter requesting a pre-motion conference to seek leave to file a motion to dismiss. (Doc. 15). Shortly thereafter, the City of New York, FedEx, and Ryan NENA also filed letters seeking to file motions to dismiss. The Court granted leave and Defendants timely filed their motions. (Docs. 35, 41, 44, 49). On March 20, 2017, without leave from the Court, Plaintiff filed an Amended Complaint adding allegations and over thirty individual defendants. (Doc. 71). In response, Defendants filed a letter requesting a pre-motion conference for leave to file a motion to strike the Amended Complaint. (Doc. 72). At the pre-motion conference, the Court denied Defendants' request, and noting Plaintiff's *pro se* status, deemed the filing as a motion to amend. The Court granted Plaintiff's motion, but allowed the

parties to file supplemental briefing to address the additional allegations in the Amended Complaint.[3]

## III.  Legal Standard

### A.  Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) requires that an action be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate the case.  Fed. R. Civ. P. 12(b)(1).  The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists. *See Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008).  On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, evidence outside of the pleadings may be considered by the court to resolve the disputed jurisdictional fact issues.  *See Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000); *see also Morrison*, 547 F.3d at 170.  When evaluating a motion to dismiss for lack of subject matter jurisdiction, the court accepts all material factual allegations in the complaint as true but does not necessarily draw inferences from the complaint favorable to the plaintiff.  *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citing *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)).

### B.  Rule 12(b)(6)

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When ruling on a motion to dismiss

---

[3] Defendants all filed supplemental memoranda.  (Docs. 87–89, 92–95).  To her opposition, Plaintiff attached a document titled "A Leading List of Medical Record Bellevue Hospital Center Inpatient Chart" in which she organized her approximately 300 page medical records and provided her comments on the medical staffs' assessments.  (Doc. 90).  Plaintiff also attaches her medical records, which the Court previously received from NYCHH.  (Doc. 91).

pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, the Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

The same standard applies to motions to dismiss *pro se* complaints. *See Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010). However, the Court is also obligated to construe a *pro se* complaint liberally and to interpret a *pro se* plaintiff's claims as raising the strongest arguments that they suggest. *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011); *Triestman*, 470 F.3d at 474. The obligation to be lenient while reading a *pro se* plaintiff's pleadings "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). "However, even *pro se* plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). A complaint that "tenders naked assertions devoid of further factual

enhancement" will not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks and brackets omitted); *see also Triestman*, 470 F.3d at 477 ("*[P]ro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'") (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)) (internal quotation marks omitted).

## C. Extrinsic Materials

"When presented with a motion to dismiss pursuant to Rule 12(b)(6), the court may consider documents that are referenced in the complaint, documents that the plaintiffs relied on in bringing suit and that are either in the plaintiffs' possession or that the plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken." *Silsby v. Icahn*, 17 F. Supp. 3d 348, 354 (S.D.N.Y. 2014) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)). Here, in addition to its supplemental briefing, NYCHH attaches Plaintiff's medical records, which it claims are referenced in and are an integral part of the Amended Complaint. Memorandum in Further Support ("NYCHH Supp. Memo") (Doc. 87), Ex. B ("Plaintiff's Medical Records").

The Court finds that the medical records are incorporated by reference into the Amended Complaint and thus they may be considered at this stage. It is abundantly clear that Plaintiff relied heavily on the records in drafting the Amended Complaint. Unlike the Complaint, the Amended Complaint specifically names over thirty individuals, including eighteen hospital employees. Plaintiff also relies on the medical records to show that she did not engage in violent behavior. In support of her claim, she explicitly quotes language from various documents in the record. Accordingly, the Court will consider Plaintiff's medical records in assessing Defendants' motion to dismiss. *See Simmons v. Pedroza*, No. 10 Civ. 821 (PGG), 2011 WL 814551, at *3 n.2

8

(S.D.N.Y. Mar. 7, 2011) ("Because [plaintiff's] medical records are incorporated by reference into his Complaint, they are properly considered on Defendants' motion to dismiss.") (citing *Brass v. American Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

## IV. Discussion

Section 1983 grants a right of action to any "citizen of the United States or other person within the jurisdiction thereof" who has been deprived of "any rights, privileges, or immunities secured by the Constitution and laws" by a person acting under color of state law.  42 U.S.C. § 1983.  To state a claim under Section 1983, a plaintiff must allege that:  (1) a right secured by the Constitution or federal law was violated by defendants, and (2) the alleged violation was committed by a person acting under color of state law.  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999).  Construing the Amended Complaint liberally, Plaintiff seems to allege that she was falsely arrested and involuntarily confined in violation of her First, Fourth, Fifth, Sixth, and Fourteenth Amendment rights.[4]

### A. The City's Motion

Plaintiff asserts claims for false arrest and false imprisonment against the City, Sergeant Bouillon, Officer Decagna, and several unnamed officers.  Amended Complaint at 2–8.

#### 1. Claims Against Individual City Employees

To establish a claim for false arrest and false imprisonment under both Section 1983 and New York law, a plaintiff must prove:  (1) that the defendants intentionally confined plaintiff; (2)

---

[4] Plaintiff asserts that her First, Fifth, and Sixth Amendment rights were violated.  However, even construing the Amended Complaint liberally, Plaintiff has not alleged any facts from which the Court can discern an intelligible, much less cognizable, claim based on a First Amendment violation.  In addition, "[b]ecause the Fifth Amendment applies only to the federal government, Plaintiff cannot state a claim for deprivation of due process in violation of the Fifth Amendment where, as here, there are no allegations of federal action."  *Cortlandt v. Westchester Cty.*, No. 07 Civ. 1783 (MDF), 2007 WL 3238674, at *5 (S.D.N.Y. Oct. 31, 2007).  Lastly, the Sixth Amendment right to counsel is inapplicable in civil cases.  Accordingly, Plaintiff's claims that her First, Fifth, and Sixth Amendment rights were violated are DISMISSED.

that plaintiff was conscious of the confinement and did not consent to it, and (3) that the confinement was not otherwise privileged. *See Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003) (quoting *Broughton v. State*, 37 N.Y.2d 451 (1975)); *see also Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991) ("In New York, the tort of false arrest is synonymous with that of false imprisonment."). Because there appears to be no dispute that Plaintiff was intentionally confined and that she was aware of it and did not consent, the only disputed element is whether the officers were authorized to confine her.

Pursuant to New York Mental Hygiene Law ("MHL") § 9.41, a police officer is authorized to "take into custody any person who appears to be mentally ill and is conducting . . . herself in a manner which is likely to result in serious harm to the person or others." N.Y. Mental Hyg. Law § 9.41. "Likely to result in serious harm" is defined as:

> (a) a substantial risk of physical harm to the person as manifested by threats of or attempts at suicide or serious bodily harm or other conduct demonstrating that the person is dangerous to himself or herself, or (b) a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear of serious physical harm.

N.Y. Mental Hyg. Law § 9.01. The officer may direct the removal of such person or directly remove her to an approved hospital or psychiatric emergency program. *Id.* "In assessing whether an officer had probable cause to arrest a person under this statute, courts apply the same objective reasonableness standard that governs Fourth Amendment claims." *Arroyo v. City of N.Y.*, No. 14 Civ. 9953 (JPO), 2016 WL 8677162, at *3 (S.D.N.Y. July 8, 2016), *aff'd*, No. 16-2425-CV, 2017 WL 1087926 (2d Cir. Mar. 21, 2017); *see also Kerman v. City of New York*, 261 F.3d 229, 240 n.8 (2d Cir. 2001). The question thus becomes whether the facts and circumstances known to the officers at the time they seized Plaintiff were sufficient to warrant a

person of reasonable caution to believe that she might be mentally ill and conducting herself in a manner likely to result in serious harm to herself or others. *Dunkelberger v. Dunkelberger*, No. 14 Civ. 3877 (KMK), 2015 WL 5730605, at *12 (S.D.N.Y. Sept. 30, 2015). "Courts have held that a showing of probable cause in the mental health seizure context requires only a probability or substantial chance of dangerous behavior, not an actual showing of such behavior." *Heller v. Bedford Cent. Sch. Dist.*, 144 F. Supp. 3d 596, 622 (S.D.N.Y. 2015) (internal quotation marks and citation omitted), *aff'd*, 2016 WL 6561491 (2d Cir. Nov. 4, 2016).

Here, Plaintiff alleges that she met with Sergeant Bouillon at the 5th Precinct on December 30, 2014 to "investigate [a] verichip-locator which [was] implanted into her body." Amended Complaint at 4. The Amended Complaint does not indicate what, if anything, Sergeant Bouillon said or what the outcome of the meeting was. Weeks later, on January 18, 2015, Plaintiff returned to the Precinct to report a burglary and to request further assistance with "pinpointing and removing a tracking device that had been placed into her body." *Id.* When it was suggested that she go to the hospital, she demurred because she was busy and not dressed properly. She did, however, indicate that she would "go at a later date." *Id.* Plaintiff asserts that at no point during this interaction did she pose a danger to herself or others. *Id.* Nevertheless, the lieutenant called an ambulance. When the EMTs arrived, Plaintiff claims that she informed them about the verichip-locator and again stated that she did not wish to go to the hospital. Plaintiff asserts that she was forcibly handcuffed, dragged into the ambulance and taken to the hospital.

Taking Plaintiff's facts as true—as the Court is required to do at this stage—the Court finds that it cannot determine whether there was probable cause to detain Plaintiff pursuant to the MHL. Although Plaintiff's statements regarding the locator chip implanted in her body may

have been concerning evidence of a mental health issue, Plaintiff does not describe any actions on her part from which the Court can infer that she engaged in any violent or aggressive behavior at the time the ambulance was called, or even that there was a "probability or substantial chance" that she would engage in such dangerous behaviror.  Courts in this Circuit have allowed complaints to survive the motion to dismiss stage where it is unclear whether the plaintiff actually posed a danger to herself or others.  *See Amid v. Police Officer Thomas R. Lamb (in His Individual Capacity)*, No. 14 Civ. 3151 (LDW), 2016 WL 1070814, at *3–*4 (E.D.N.Y. Mar. 15, 2016) (noting that plaintiff conceded that she called a hotline contemplating suicide, but denying motion to dismiss because it was disputed whether plaintiff posed a danger to herself or others when officers arrived at her home); *see also Amato v. Hartnett*, 936 F. Supp. 2d 416, 435 (S.D.N.Y. 2013) (crediting plaintiff's allegations that he had not made any statements indicating that he was contemplating hurting himself, and holding that question of whether plaintiff posed a "substantial risk of physical harm" to himself for others was a question of fact for the jury).

Moreover, refusal to accept medical treatment, by itself, does not establish that a person poses a threat to herself or others.  *See Schoolcraft v. City of N.Y.*, 103 F. Supp. 3d 465, 505 (S.D.N.Y. 2015), *on reconsideration in part*, 133 F. Supp. 3d 563 (S.D.N.Y. 2015) (denying summary judgment because although plaintiff refused medical treatment, the record was devoid of any violent behavior or indication that he posed a danger to himself or others); *see also Myers v. Patterson*, 819 F.3d 625, 634 (2d Cir. 2016) (noting that a "person may be annoyed, uncooperative, and irrational without presenting a danger to herself or of violence to others" and vacating district court's grant of qualified immunity to officer defendant for lack of evidence substantiating plaintiff's dangerousness).

Accordingly, Plaintiff's claims against the unnamed lieutenant and Officer Decagna survive the motion to dismiss stage. However, because Plaintiff does not allege that Sergeant Bouillon was involved in the seizure or decision to transport her to the hospital, the claims against him are DISMISSED.

### 2. Municipal Liability

"[T]o prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–91 (1978). "The fifth element reflects the notion that 'a municipality may not be held liable under § 1983 solely because it employs a tortfeasor.'" *Hayes v. Cnty. of Sullivan*, 853 F. Supp. 2d 400, 438-39 (S.D.N.Y. 2012) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)). Thus, a plaintiff must allege that such a municipal policy or custom is responsible for his injury. *Brown*, 520 U.S. at 403-04; *see also Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) ("A municipality or other local government may be liable under [§ 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.") (quoting *Monell*, 436 U.S. at 692). Here, Plaintiff does not allege the existence of a City policy or custom that caused her injuries. She also does not allege that the officers involved in her arrest were decisionmakers or improperly trained.

Accordingly, the City's motion to dismiss Plaintiff's claims against it is GRANTED.

**B. NYCHH's Motion**

Plaintiff alleges that the NYCHH and its staff violated her right to procedural and substantive due process under the Fourteenth Amendment by involuntarily committing her to Bellevue Hospital. The NYCHH staff includes Doctors Lyons, Hawkins, Penestti, Howard, Udarbe, Song; Nurses Charlene, Phunstock, Behrens, Lam, Velasco, Zenaida, Hsu; and Chiu, a social worker. Plaintiff also asserts her claims against Chen, Williams, an advocacy director, and Daridson, who works at the Medicaid Office at Bellevue Hospital. Amended Complaint at 2–8.

**1. Claims Against Individual NYCHH Employees**

As an initial matter, NYCHH argues that the claims against nurses Charlene, Phunstock, Behrens, Lam, Velasco, Zenaida and Hsu, and the other Bellevue employees, including Chiu, Chen, Williams, and Daridson should be dismissed because Plaintiff does not sufficiently allege that they were personally involved in a constitutional deprivation. NYCHH Supp. at 12.

The Court agrees. Plaintiff's conclusory statement that the nurses "directly participated in and facilitated" her confinement and that Williams and Daridson included false statements in her records are insufficient to state a cause of action against them. Similarly, Plaintiff fails to adequately allege facts to support claims against Chiu, a social worker, and Chen, a licensed therapist. Plaintiff claims that Chiu made a number of false allegations in her assessment, including that Plaintiff "swung at the EMT" and that she was engaging in "violence or endangering others." Amended Complaint at 8. She also alleges that Chen wrote that she "was a danger to self" and that she had "poor coping skills." *Id.* A review of these records indicates that both Chiu and Chen were merely summarizing what had been reported to them as the reason for Plaintiff's admission to the hospital. *See* Plaintiff's Medical Records at 93 (including Chiu's assessment and stating that Plaintiff "required restraints in the ambulance but got out and swung

14

at the EMT"); *id.* at 344 (including Chen's assessment stating that "Patient was admitted to [the hospital] for danger to self").  Chen's individual assessment that Plaintiff had "poor coping skills," does not create liability for a constitutional violation.  Accordingly, Plaintiff's claims against Charlene, Phunstock, Behrens, Lam, Velasco, Zenaida, Hsu, Chiu, Chen, Williams, and Daridson are DISMISSED.[5]

### i.     Procedural Due Process

Plaintiff asserts that the doctors at Bellevue did not perform an independent assessment of her, but rather relied on the erroneous allegations made by the emergency medical personnel.  Amended Complaint at 4–5.  She also claims that she requested hearings to challenge her confinement, but that her requests were ignored.  *Id.* at 7.

New York Mental Hygiene Law § 9.39 provides for the temporary involuntary commitment of persons to mental health facilities:

> The director of any hospital maintaining adequate staff and facilities for the observation, examination, care, and treatment of persons alleged to be mentally ill . . . may receive and retain therein as a patient for a period of fifteen days any person alleged to have a mental illness . . . which is likely to result in serious harm to himself or others.

N.Y. Mental Hyg. Law § 9.39(a).  The patient must be given a statement of her status and her rights at the time of admission, and the Mental Hygiene Legal Service[6] must be notified.  *Id.*; *see also Fisk v. Letterman*, 501 F. Supp. 2d 505, 514 (S.D.N.Y. 2007).  If a person admitted

---

[5]  The Court also dismisses Plaintiff's claims against Official Annmarie Britten-Franklin.  The Amended Complaint alleges that "Plaintiff has been implanted the verichip-locator in her body, inquire deeply into the cause of happening above things, the actor is NYS WCDB, by Annmarie Britten-Franklin."  Amended Complaint at 8.  This allegation is insufficient to state a claim under Section 1983 against Britten-Franklin.

[6]  The Mental Hygiene Legal Service is a New York State agency responsible for representing, advocating and litigating on behalf of individuals receiving services for a mental disability. https://www.nycourts.gov/courts/ad2/mhls_mainpage.shtml

according to Section 9.39 is to be retained in the hospital for a period of more than forty-eight hours, then (within that forty-eight hour period) "another physician who shall be a member of the psychiatric staff of the hospital" must examine the person and confirm that she "qualifies under the requirements of Section 9.39. N.Y. Mental Hyg. Law § 9.39; *see also Phelps v. Bosco*, No. 13 Civ. 1510 (GTS), 2017 WL 437407, at *6 (N.D.N.Y. Feb. 1, 2017). Upon request, a hearing must be held within five days of the patient's admission to determine whether there is reasonable cause to believe that the patient has a mental illness for which immediate inpatient care and treatment is appropriate and which is likely to result in serious harm to herself or others. N.Y. Mental Hyg. Law § 9.39. The Second Circuit has held that the MHL meets the requirements of procedural due process. *See Project Release v. Prevost*, 722 F.2d 960, 973 (2d Cir. 1983); *see also Fisk*, 501 F. Supp. 2d at 514. Therefore, if Defendants' actions comported with the "strictures of [the MHL], they also satisfied the requirements of procedural due process." *Capellupo v. Nassau Health Care Corp.*, No. 06 Civ. 4922 (JFB), 2009 WL 1705749, at *7 (E.D.N.Y. June 16, 2009).

Based on Plaintiff's allegations and the medical records upon which she relies, the Court finds that the procedural requirements for involuntary confinement were met. Plaintiff was admitted pursuant to Section 9.39 and a form was completed detailing the reasons for her confinement. *See* Plaintiff's Medical Records at 28.[7] Hours after she was transported to Bellevue Hospital, a physician examined her and found that confinement pursuant to Section 9.39 was appropriate because there was reasonable cause to believe that she had a mental illness

---

[7] As noted previously, NYCHH submitted under seal a copy of Plaintiff's medical records as an Exhibit to its supplemental memoranda. Plaintiff also attached a copy of these medical records to her supplemental submissions and argued that NYCHH had obtained her medical records improperly. *See* Docs. 91, 92.

that would likely result in serious harm to herself or others.[8]  *Id.*  Plaintiff was given notice of

her status and rights.  *Id.* at 30.  On January 19—less than forty-eight hours after admission—

Plaintiff was examined by another physician who found that she was suffering from psychosis,

was delusional, and unable to take care of herself.  The physician determined that she was at risk

of serious harm to herself or others and that involuntary confinement was appropriate.[9]  *Id.* at 29.

On January 23, Plaintiff made a request for a court hearing to challenge her involuntary

confinement, which was received on January 26, 2015.  *Id.* at 43.  The hearing was scheduled for

January 27, 2015.  *Id.* at 42.  The hearing was ultimately postponed until February 3, 2015.

 Within fifteen days of her admission, the Director at Bellevue completed an application

for Plaintiff to be admitted pursuant to Section 9.27, which allows the director of a hospital to

retain a patient "alleged to be mentally ill and in need of involuntary care and treatment."[10]  *Id.* at

---

[8]  Specifically, Dr. Hawkins noted that Plaintiff's

> likely chronic psychosis has led to violence today and puts her at significant risk of harm to herself
> as well.  Thus she meets criteria for involuntary admission and will be admitted 9.39.  She is at
> chronically increased risk of danger to self and others given history of chronic delusions.  She is at
> acutely elevated risk given the intensity of her delusions that led to violence today and impaired
> decision making that could have led to her being injured by NYPD for her threatening behavior.

Plaintiff's Medical Records at 91.

[9]  N.Y. Mental Hyg. Law § 9.39(a)(2) provides that

> [t]he director shall admit such person pursuant to the provisions of this section only if a staff
> physician of the hospital upon examination of such person finds that such person qualifies under the
> requirements of this section. Such person shall not be retained for a period of more than forty-eight
> hours unless within such period such finding is confirmed after examination by another physician
> who shall be a member of the psychiatric staff of the hospital.

[10]  N.Y. Mental Hyg. Law § 9.39(b) provides that

> [w]ithin fifteen days of arrival at the hospital, if a determination is made that the person is not in
> need of involuntary care and treatment, he shall be discharged unless he agrees to remain as a
> voluntary or informal patient. If he is in need of involuntary care and treatment and does not agree
> to remain as a voluntary or informal patient, he may be retained beyond such fifteen day period only
> by admission to such hospital or another appropriate hospital pursuant to the provisions governing
> involuntary admission on application supported by medical certification and subject to the

32–33; N.Y. Mental Hyg. Law § 9.27.  The application was accompanied by the certifications of two doctors who examined her separately.  *Id.* at 34–37; *see* N.Y. Mental Hyg. Law § 9.27 (requiring certificates of "two examining physicians, accompanied by an application for the admission" of a patient).  The doctors found Plaintiff to be suffering from "worsening psychosis" and "persecutory delusions," and recommended that she remain in the hospital for treatment.  *Id.* Plaintiff was given notice of this attempt to change her status.  *Id.* at 38.  The medical records also indicate that Plaintiff made a subsequent request for a court hearing, on January 30, to challenge her confinement, which was addressed at the February 3 hearing.  *Id.* at 40.  Thus, Plaintiff was afforded all of the process she was due.

Accordingly, NYCHH's motion to dismiss Plaintiff's procedural due process claim is GRANTED.

### ii.    Substantive Due Process

Plaintiff alleges that the Bellevue Hospital doctors had no basis for her confinement and that because she refused to take medication, the hospital staff concealed the medicine in her food.  Amended Complaint at 6.  NYCHH argues that Plaintiff's claims against the Bellevue Hospital doctors should be dismissed because their actions in treating Plaintiff were not a "substantial departure from accepted judgment, practice, or standards."  NYCHH Supp. at 8.

"As a substantive matter, due process does not permit the involuntary hospitalization of a person who is not a danger either to herself or to others."  *Rodriguez v. City of New York*, 72 F.3d 1051, 1061 (2d Cir. 1995) (citing *O'Connor v. Donaldson*, 422 U.S. 563, 575 (1975)).  Further, the right to refuse medication is protected by the Due Process Clause of the Fourteenth

---

provisions for notice, hearing, review, and judicial approval of retention or transfer and retention governing such admissions, provided that, for the purposes of such provisions, the date of admission of the patient shall be deemed to be the date when the patient was first received under this section.

Amendment and is derived from the New York Code of Rules and Regulations, which provides that "[p]atients who object to any proposed medical treatment or procedure . . . may not be treated over their objection except" in narrow circumstances, including "where the patient is presently dangerous and the proposed treatment is the most appropriate reasonably available means of reducing that dangerousness." 14 N.Y.C.R.R. § 527.8(c)(1). However, due process does not "require a guarantee that a physician's assessment of the likelihood of serious harm be correct." *Rodriguez*, 72 F.3d at 1062. Therefore, "a doctor will not be liable under § 1983 for the treatment decisions she makes unless such decisions are 'such a substantial departure from accepted judgment, practice, or standards as to demonstrate that [she] actually did not base the decision on such a judgment.'" *Kulak v. City of New York*, 88 F.3d 63, 75 (2d Cir. 1996).

The Second Circuit has determined that a doctor's decision to commit someone involuntarily under the MHL "does not ordinarily involve matters 'within the layman's realm of knowledge.'" *Olivier v. Robert L. Yeager Mental Health Ctr.*, 398 F.3d 183, 190 (2d Cir. 2005) (quoting *Sitts v. United States,* 811 F.2d 736, 740 (2d Cir. 1987)). The decision is "'based on medical 'impressions' drawn from subjective analysis and filtered through the experience of the diagnostician.'" *Id.* Thus, whether it violates a person's right to substantive due process "'turns on the *meaning* of the facts which [typically] must be interpreted by expert psychiatrists and psychologists.'" *Id.* at 191 (emphasis and alteration in original) (quoting *Addington*, 441 U.S. at 429). Therefore, in order to demonstrate an objective violation of those standards, a plaintiff ordinarily must introduce expert testimony to establish the relevant medical standards that were allegedly violated.

Here, Plaintiff alleges that she did not engage in any conduct while at the hospital that would indicate that she was a danger to herself or others. As a result, her confinement and the

subsequent administration of anti-psychotic drugs without her consent were a violation of her rights. The physicians found Plaintiff to be psychotic and delusional, however, based on the Court's review, the medical records submitted by the NYCHH and Plaintiff appear to bear out her claim that she was not a danger to herself or others. The medical records indicate Plaintiff generally presented a "low risk" for suicide, appeared calm, and did not engage in aggressive or violent behavior during her stay at Bellevue Hospital. *See* Plaintiff's Medical Records at 65 (record for 1/18/15 noting absence of any physically or verbally threatening behavior), 121, 133 (record for 1/19/15 noting same and that Plaintiff was "quiet and calm"), 137 (record for 1/20/15 noting same and that "no aggressive behavior [by Plaintiff] presented so far"), 157 (record for 1/21/15 noting same and that Plaintiff exhibited a "safe disposition"), 183 (record for 1/22/15 noting Plaintiff had no "insight into her illness" and that there had been no "aggressive behavior so far"), 204 (record for 1/24/15 noting that Plaintiff "was calm" and that there had been "no incidence of elopement or assault throughout the shift"), and 311 (record for 2/2/15 noting that Plaintiff "was calm and free of behavioral problems during this tour"). The records also indicate that the hospital staff did not administer anti-psychotic drugs, but rather gave her amlopidine, with her consent, to address her high blood pressure. *Id.* at 105. Thus, taking Plaintiff's allegations as true, the Court finds that whether the doctors' decision to involuntarily commit Plaintiff was a substantial departure from accepted practice is not proper for resolution at the motion to dismiss stage. Consequently, NYCHH's motion to dismiss Plaintiff's claims against NYCHH and its doctors is DENIED.

### 2. Municipal Liability

As with the claims against the City, to assert a claim against the NYCHH, Plaintiff was required to allege that a NYCHH policy or custom is causally connected to the alleged

constitutional deprivation.  The Amended Complaint does not refer to any NYCHH policy or custom.  Accordingly, Plaintiff's claims against the NYCHH are DISMISSED.

### C. Ryan NENA's Motion to Dismiss

Plaintiff asserts claims against Ryan NENA for implanting a locator chip into her chest, for conducting illegal blood testing, and for failure to provide a complete set of medical records to her upon request.  Amended Complaint at 9–10.  Ryan NENA moves to dismiss Plaintiff's claims for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

Under the Federal Torts Claims Act ("FTCA"), a claimant must exhaust all administrative remedies with the appropriate federal agency—here, the Department of Health and Human Services ("HHS")—prior to filing a complaint in federal district court.  *Porter v. Hirsch*, 345 F. Supp. 2d 400, 403 (S.D.N.Y. 2004); *see also* 28 U.S.C. § 2675(a) ("An action shall not be instituted upon a claim against the United States for money damages for injury . . . or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate federal agency").  The exhaustion requirement under Section 2675(a) is jurisdictional, and failure to exhaust administrative remedies prior to bringing a claim under the FTCA divests the district court of subject matter jurisdiction over that claim.  *Bueno v. Sheldon*, No. 99 Civ. 1034 (JGK), 2000 WL 565192, at *4 (S.D.N.Y. May 9, 2000).  The Amended Complaint is silent as to whether Plaintiff presented her claims to HHS.  Because Plaintiff has failed to file an administrative claim, as required by Section 2675, the Court lacks subject matter jurisdiction over this action.  *See Porter*, 345 F. Supp. 2d at 403 (dismissing action for lack of subject matter jurisdiction due to plaintiff's failure to file administrative claim with HHS).

21

Additionally, the Court finds that Ryan NENA is not a proper defendant in this matter. The Federally Supported Health Care Center Assistance Act of 1992 ("FSHCAA"), 42 U.S.C. § 233, extended Federal Torts Claims Act coverage to certain health centers that receive federal funding under Section 330 of the Public Health Service Act by authorizing the Department of Health and Human Services ("HHS") to "deem" them employees of the Public Health Service. *See* 42 U.S.C. § 233(g)-(n). Once deemed Public Health Service employees, a community health center and its employees enjoy immunity for their acts which relate to their employment, and any actions against them are treated as actions against the United States. 42 U.S.C. § 233(a). Thus, a plaintiff's remedy for alleged negligence by deemed health centers and their employees "shall lie against the United States only." *Id.*

Here, as evidenced by the "Deeming Notices" issued by the Health Resources and Services Administration and attached to its motion, Ryan NENA was deemed a Public Health Service employee for purposes of the FSHCAA during the relevant time period. Affirmation of Lienne Pisano (Doc. 50), Ex. D. Thus, Ryan NENA, and its employees—Doctors Becky Lou and Khin Win, and interpreter Mey Leon Chen—are not the correct defendants. Plaintiff should have filed the action against the United States.

Accordingly, Ryan NENA's motion to dismiss Plaintiff's claims against Ryan NENA and its employees is GRANTED.

### D. FedEx's Motion

Plaintiff claims that FedEx's alleged actions causing the delay in delivering her Complaint to NYS DOH is a "wanton[] violation of [her] human rights." Amended Complaint at 13. FedEx argues that it cannot be held liable under Section 1983 because it is not a state actor. Defendant Federal Express Corporation's Motion to Dismiss & Memorandum of Law in Support

("FedEx Memo") (Doc. 41) at 4. Moreover, even if could be considered a state actor, Plaintiff has failed to adequately allege that FedEx violated a federal constitutional right. *Id.*

To sustain a claim under Section 1983, a plaintiff must first establish that a defendant acted under color of state law. *Sybalski v. Indep. Grp. Home Living Program, Inc.,* 546 F.3d 255, 257 (2d Cir. 2008). To constitute state action, there must be an alleged deprivation of a federal right "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *see also Den Hollander v. Copacabana Nightclub*, 624 F.3d 30, 33 (2d Cir. 2010) (referring to and applying the "two prong" test outlined in *Lugar*).

The Court finds that FedEx is not a state actor for the purposes of Plaintiff's Section 1983 claim. FedEx is a private entity and the Amended Complaint does not allege that FedEx, by purportedly delaying her mailings, acted under color of state law. Accordingly, FedEx's motion to dismiss is GRANTED.

## V.    Conclusion

For the reasons set forth above, Defendants motions are GRANTED in part and DENIED in part, as summarized below:

- The City's motion to dismiss Plaintiff's claims against the City is GRANTED.

- NYCHH's motion to dismiss Plaintiff's claims against NYCHH is GRANTED.

- Ryan NENA's motion to dismiss is GRANTED.

- FedEx's motion to dismiss is GRANTED.

- Plaintiff's claims against Bertran Bouillon, Harley Charlene, Tsering Phunstock, Kim Behrens, Yin Lam, Analyn Velasco, Igama Zenaida, Chih Hsu; Trista Chiu, Yu- Ying Chen, Williams, Sona Daridson , Becky Lou, Khin Win, Mey Leon Chen, and Annmarie Britten-Franklin are DISMISSED.

What remains of the Amended Complaint are Plaintiff's claims against Officer Decargna for false arrest and false imprisonment, and Doctors Lyons, Hawkins, Penestti, Howard, Udarbe, and Song for involuntary confinement.

The Clerk of Court is respectfully directed to mail a copy of this Order to Plaintiff and terminate the motions, Docs. 35, 41, 44, 49.

It is SO ORDERED.

Dated: August 4, 2017
New York, New York

Edgardo Ramos, U.S.D.J.